## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CRIMINAL ACTION |
| v. | ) | |
| | ) | No. 07-20063-01-KHV |
| MICHAEL E. PARKER, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

### MEMORANDUM AND ORDER

On September 24, 2007, a jury found defendant guilty of maliciously conveying false information by telephone about an alleged attempt to destroy a city hall and school by fire and explosives in violation of 18 U.S.C. § 844(e). This matter is before the Court on Defendant Michael Parker's Combined Motion For Judgment Of Acquittal And, In The Alternative, New Trial (Doc. #37) filed October 3, 2007. For reasons stated below, defendant's motion is overruled.

### Standards For Motions For Judgment Of Acquittal

In considering a motion for judgment of acquittal pursuant to Rule 29, Fed. R. Crim. P., the Court cannot weigh the evidence or consider the credibility of witnesses. See Burks v. United States, 437 U.S. 1, 16 (1978). Rather, the Court must "view the evidence in the light most favorable to the government and then determine whether there is sufficient evidence from which a jury might properly find the accused guilty beyond a reasonable doubt." United States v. White, 673 F.2d 299, 301 (10th Cir. 1982). The jury may base its verdict on both direct and circumstantial evidence, together with all reasonable inferences that could be drawn therefrom, in the light most favorable to the government. See United States v. Hooks, 780 F.2d 1526, 1531 (10th Cir.), cert. denied, 475 U.S. 1128 (1986). Acquittal is proper only if the evidence implicating defendant is nonexistent or

is "so meager that no reasonable jury could find guilt beyond a reasonable doubt." White, 673 F.2d at 301; see United States v. Brown, 995 F.2d 1493, 1502 (10th Cir.) (evidence supporting the conviction "must be substantial and must not raise a mere suspicion of guilt") (citation omitted), cert. denied, 510 U.S. 935 (1993), overruled on other grounds by United States v. Prentiss, 256 F.3d 971 (10th Cir. 2001).

**Standards For Motions For New Trial**

Rule 33, Fed. R. Crim. P., provides that a motion for a new trial may be granted "if required in the interest of justice." A motion for new trial under Rule 33 is not regarded with favor and is granted only with great caution. See United States v. Custodio, 141 F.3d 965, 966 (10th Cir. 1998). The decision whether to grant a motion for new trial is committed to the sound discretion of the trial court. See id.

**Factual Background**

The evidence at trial may be summarized as follows:

On April 19, 2007, between 5:15 a.m. and 8:09 a.m., the Douglas County Emergency Services received nine 911 calls from a male individual who called from the same prepaid cellular phone each time. In four of the calls (calls 5, 6, 7 and 8), the individual made threats about a bomb or pipe bombs which would be used in the schools or at city hall. During the same time period, approximately ten other calls were made from the same phone to various people including defendant's ex-girlfriend, Tina Keys. None of these calls were completed because the cellular phone had no minutes remaining.

Virgin Mobile informed police dispatch that the cellular phone was subscribed to Sara Little. Officers responded to the address listed in the subscriber information and determined that the

address given was that of Little's father.  Officers determined that neither Little nor her phone were at that address.  According to Little's sister, Sara had not been seen in days.

At approximately 8:30 a.m., Sprint "pinged" the phone to determine its approximate location. Sprint was able to determine that the phone was located within nine meters of the southeast corner of 1200 New York street in Lawrence, Kansas.  Officers arrived in the area of 1200 New York street at approximately 8:40 a.m. and took up positions around the residence at that location.  The structure on the southeast corner of 12th and New York is divided into four separate apartment units and was known by police as an area where a significant amount of drug activity took place.

Officers went from door to door at 1200 and 1201 New York street, attempting to contact residents.  At 9:00 a.m., Officer Doug Payne was positioned at the rear of the structure where a stairway leading up to defendant's apartment was located.  Officer Payne did not see anyone enter or leave the apartment while he was located at that position.

At 9:10 a.m., Detective McAtee and Officer Sam Harvey attempted to contact the resident of the apartment located at the rear of 1200-1201 New York street.  After a few minutes, defendant called out from inside and asked who was there.  Detective McAtee and defendant talked for a little while.  Defendant then let Detective McAtee and Officer Harvey into his apartment.

According to phone toll records, the last phone call from the phone which made the threatening 911 calls was at 9:08:57.  It ended at 9:09:36, approximately 24 seconds before Detective McAtee and Officer Harvey knocked on defendant's door and approximately nine minutes after Officer Payne stationed himself outside of defendant's apartment.  Detective McAtee asked defendant for consent to search his residence for the phone that made the threatening calls, but defendant denied consent.  Detective McAtee left the residence to apply for a search warrant while

- 3 -

defendant stayed at the residence with other officers.  During the process of applying for a search warrant, law enforcement officers purchased a Virgin Mobile prepaid card and added the minutes to the phone which had made the 911 calls.  Detective McAtee called the officers at defendant's residence and told him that he had added minutes to the subject phone and was going to call it right away.  The officers heard the phone ringing from an area located where a black recliner was positioned.

Detective McAtee applied for and received a warrant to search defendant's residence for the phone.  He ultimately found it hidden inside the black recliner in the living room.  Defendant testified that he had no idea that the phone was in his apartment.  Defendant told the officers that he had been with Sarah Coleman, Little and others the night before the phone calls to 911 were made, but did not know when he fell asleep or who was present in his apartment when he finally passed out.

Coleman gave a statement to police on April 19, 2007.  She said that she had been with defendant the night before and that Little had been with her part of that time.  Coleman told police that they were all smoking crack and when defendant left her and Little at the residence for a short time, Little left and never returned.  Coleman also said that she saw Little's cell phone on the couch when she left late that evening or very early in the morning.  Police played a tape of the male voice from the 911 calls and Coleman identified it as defendant's voice.  Coleman was accompanied by approximately six officers when she made this identification, but she testified that they did not intimidate her.  Coleman listened to the 911 calls in open court and again identified defendant as the person who had made them.

On July 4, 2007, however, prior to trial, Coleman could not identify defendant's voice when he called her. Coleman testified that she did not remember that he had called that day because she was so drunk and high from drinking alcohol and smoking crack cocaine. Further, she testified that defendant had disguised his voice in an attempt to keep her from identifying him.

Little was eventually located in July of 2007, and police interviewed her while she was in custody on an unrelated charge. Little told police that she had left her phone at defendant's apartment on April 18, 2007. When she went back to retrieve it the next day, after having heard that defendant had made phone calls to 911 threatening to blow up a school, she saw police officers. Because she had warrants for her arrest, she left the area quickly in an effort to avoid being seen.

## Analysis

### I.    Motion For Judgment Of Acquittal

Defendant argues that he is entitled to a judgment of acquittal because the evidence was insufficient for a reasonable jury to find that he made the 911 calls. Defendant argues that the inference that he made the 911 calls is "too tenuous considering the multiple living units at 1200 New York, the high crime activity of the area and the lack of sufficient investigation into other people in the area at the time of the calls." Defendant's Combined Motion (Doc. #37) at 4. The Court disagrees. Viewing the evidence in a light most favorable to the government, a reasonable jury could conclude that defendant made the 911 calls. The last phone call ended at 9:09:36 a.m., approximately 24 seconds before Detective McAtee and Officer Harvey knocked on defendant's apartment door. Payne had stationed himself outside of defendant's apartment some nine minutes earlier and he did not see anyone leave the apartment. Indeed, defendant testified that from when he woke up around 7:00 a.m. until officers arrived, no one else was in the apartment. After officers

arrived at defendant's apartment, they called the suspect phone and heard it ringing from an area located near a black recliner in defendant's living room.  After officers obtained a search warrant, they found the phone hidden inside the black recliner.  This evidence was more than sufficient for a reasonable jury to find beyond a reasonable doubt that defendant made the 911 calls.[1]  See Brown, 995 F.2d at 1502 (evidence supporting conviction must be substantial and must not raise mere suspicion of guilt); cf. White, 673 F.2d at 301 (acquittal is proper only if evidence implicating defendant is nonexistent or so meager that no reasonable jury could find guilt beyond reasonable doubt).  The Court therefore overrules defendant's motion for judgment of acquittal on this ground.

## II.      Motion For New Trial

Defendant argues that he is entitled to a new trial because the Court erred when it allowed Detective Brown to offer opinion testimony on voice identification.  Defendant argues that Detective Brown lacked the requisite foundation to opine on the identification of defendant as the 911 caller.  "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent

---

[1]      The evidence is even more compelling when combined with the voice identification testimony of Little, Coleman and Detective Brown.  Defendant argues that the voice identifications were entitled to very little weight because they were tainted.  Defendant maintains that Little identified him as the 911 caller months after he had been charged and while she was attempting to avoid prosecution from an unrelated arrest.  Defendant argues that Coleman's testimony was insufficient because (1) she had already been told that the voice on the call was defendant's voice; (2) she had been engaging in heavy drug use and had been without sleep for some 40 hours before she identified the voice; and (3) she did not recognize defendant's voice when he call her on a recorded call.  Finally, defendant claims that Detective Brown had made up his mind who the 911 caller was before he listened to the tapes.  At trial, defendant challenged the credibility of Little, Coleman and Detective Brown on these various grounds, but he does not challenge the Court's instructions on voice identification and witness credibility including the credibility of drug abusers and law enforcement officers.  Accordingly, the jury was entitled to give the testimony of Little, Coleman and Detective Brown what weight it thought was appropriate in light of the Court's instructions.

- 6 -

claims." Fed. R. Evid. 901(a). In particular, Rule 901 permits identification of a voice, "whether heard firsthand or through mechanical or electronic transmission or recording, by opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker." Fed. R. Evid. 901(b)(5). The Tenth Circuit has held that a single telephone call, combined with hearing a voice in court, is sufficient for voice identification testimony to go to the jury. United States v. Zepeda-Lopez, 478 F.3d 1213, 1219 (10th Cir. 2007); United States v. Axselle, 604 F.2d 1330, 1338 (10th Cir. 1979). Such voice identification need only rise to the level of minimal familiarity. United States v. Bush, 405 F.3d 909, 919 (10th Cir. 2005). Here, Detective Brown heard defendant's voice for some four hours during an interview. He also heard the 911 calls. Defendant's argument that Detective Brown had made up his mind who the 911 caller was before he listened to the tapes goes to the weight, not the admissibility of the voice identification. See Zepeda-Lopez, 478 F.3d at 1220; Bush, 405 F.3d at 919; see also Axselle, 604 F.2d at 1338 (arguments that voice identification testimony was deficient because witness was not expert in voice identification, defendant's voice had no peculiar characteristics, and witness had only heard defendant's voice once outside of telephone conversation, go to weight of evidence); United States v. Cerone, 830 F.2d 938, 949 (8th Cir. 1987) (any person may identify speaker's voice if he has heard it at any time; minimal familiarity is sufficient for admissibility). The Court therefore overrules defendant's motion for new trial.

**IT IS THEREFORE ORDERED** that Defendant Michael Parker's Combined Motion For Judgment Of Acquittal And, In The Alternative, New Trial (Doc. #37) filed October 3, 2007 be and hereby is **OVERRULED**.

Dated this 13th day of November, 2007, at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge